IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| DOUGLAS EDWARDS | : | NO. 02-662 |

FILED
APR 2 3 2014
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

MEMORANDUM

McLaughlin, J.                                              April 23, 2014

    The defendant was convicted by a jury of possession of a firearm as a convicted felon. His conviction and sentence were affirmed by the United States Court of Appeals for the Third Circuit. The defendant has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Prison. The Court appointed counsel to represent the defendant. At a hearing held on the motion, counsel for the defendant withdrew all claims in the motion except the claim for ineffective assistance of counsel in his counsel's failure to call three witnesses: Sharon Thompson; Mattie Edwards; and Horace Edwards. The Court will deny the petition.

I. Factual Background

    Following is a brief summary of the testimony from the original trial. On March 23, 1999, Douglas Edwards was involved in an altercation with his former girlfriend, Dawn Matthews. Matthews, who had been waiting outside of the defendant's home in

South Philadelphia to give him a birthday present, verbally and physically assaulted defendant's new girlfriend, Sharon Thompson, prompting the defendant to punch Matthews in the eye. Matthews then drove to a nearby gas station, called 911, and reported the incident to the responding officers (one of whom was Officer Fidler). She then proceeded to the police station where she filed a formal police report. As Matthews was leaving the police station, she happened to see the defendant drive by and hailed a patrol car operated by Officer Flagler and another officer. After explaining that she had seen the defendant, she rode along with police in what became a high-speed chase involving a number of officers. Ultimately, with Matthews' help, the police apprehended the defendant and recovered a gun from under the dashboard of his car.

The defense at trial was that Matthews planted the gun in the defendant's car after the altercation among the defendant, Matthews, and Thompson, the defendant's then girlfriend and current wife. At the hearing on the motion, the defendant attempted to show that Lefeber was ineffective in not calling (1) Thompson who would have testified that she saw Matthews inside the defendant's car on the driver's side after the altercation and heard Matthews say that she would make sure that the defendant went to jail, and (2) the defendant's parents who would have testified that Matthews apologized to them for planting the

gun in the defendant's car. At the hearing on the petition, the defendant presented the testimony of his father, Deacon Horace Edwards; his wife, Thompson; and himself. The government presented the testimony of Hope Lefeber, the defendant's trial counsel.

Although, on direct, Deacon Edwards did testify that Matthews came over to his house after the incident and apologized for planting the gun in the defendant's car, on cross-examination, he said that he did not tell the police that Matthews had told him that she planted the gun and he did not call the defense counsel at the time to tell her that Matthews had said that. He then denied that he ever told Lefeber that Matthews apologized nor had he told any investigator for Lefeber that Matthews had said that. At one point, Deacon Edwards said that he did not know what his wife told Lefeber and at another point he said that he did.

Thompson testified that she saw Matthews go inside the defendant's car on the driver's side after the fight between her and Matthews that night. Matthews then said to the defendant, "I'm going to make sure m-f'er will go to jail." Thompson testified that she told Lefeber about this in the hall of the courthouse before the trial. She stayed outside the courtroom during the trial and would have been willing to testify on behalf of the defendant. During her hearing testimony, Thompson

3

admitted that she never told the police that she saw Matthews in the defendant's car. She talked to the defendant a lot on the phone from the FDC and never told him about being a witness for him at trial.

The defendant testified that Thompson told him that the alarm went off in his car and she left a bag in the car. They went out of the house and they saw Matthews leaving the car and she said to them, "You going to jail tonight, . . .." Matthews then drove off in her own car. He said that he told all of his lawyers about Matthews being in the vehicle.[1] He also said that his mother told him that Matthews came by and apologized for setting him up. He said that he told Lefeber that Thompson would be willing and able to testify. He said that Lefeber said that she was going to present his parents and Thompson as witnesses. When she did not, he felt that it was her call at the time.

Although Lefeber did not have a detailed memory of all the events surrounding the preparation for trial and the trial of the defendant, she said that it would have been her practice to talk with the defendant about the facts of the case and potential witnesses. She does not have any specific memory as to a discussion about his wife, Thompson. In her view, the trial was not about the fight itself, but about whether Matthews planted a

---

[1] Matthews had retained two lawyers prior to the appointment of Lefeber.

4

gun in the defendant's car. Lefeber said that she would not have tried to prove who hit whom because neither side would win that argument. She would not have been interested in calling Thompson to testify about who threw the first punch. If the defendant had told her that he had seen Matthews in his car after the fight and before his arrest, that would have been a significant fact in her mind as would the fact that the defendant's wife could testify to that. She is sure that she spoke with Thompson at the trial, but she has no specific recollection of it. She recalls exchanging pleasantries with the defendant's parents.

Lefeber testified that if the defendant had told her that Thompson could testify that she saw Matthews in the defendant's car, she would have followed-up and spoken with Thompson about that. She did recall presenting the testimony of Karen Cheatham who was a neighbor who observed Matthews going into the defendant's car that night. Cheatham is the only eye witness about whom Lefeber was told. Lefeber said that her judgment would have been to call Cheatham because she was as an unrelated, unbiased third party. She recalled that the government did a good job of cross-examining Cheatham with some phone records from the FDC that showed some relationship between Cheatham and the defendant. Lefeber was asked if she would have called Thompson to add to what Cheatham said because Cheatham's

5

testimony was somewhat impeached.  Lefeber stated that she would have called Thompson in that event.

Lefeber has no memory of the defendant or his mother telling her that his mother could testify that Matthews came about a week after the incident and confessed that she had planted the gun.  She was asked that if she had been told that would she have considered that significant and prepared them as witnesses.  She said that she would have.  She commented that she does not get deacons too often as witnesses.  She does not recall being told that anyone other than Cheatham observed Matthews in the car.  As far as she remembers, Thompson was just a party to the initial fight with Matthews which was not an important element of the case.  She understood that the parents were asleep at the time of the incident.  She got this information from the defendant.  Lefeber testified that had she known that Matthews had confessed to the defendant's parents, she would have started her cross-examination of Matthews with that question.  She did not see such a question when she reviewed the transcript of her cross-examination.

With all respect to Deacon Edwards who appears to be a distinguished gentleman, the Court did not find his testimony reliable.  On cross-examination, he appeared to retract much of what he had said on direct.  The Court also accepts Lefeber's testimony that had she been told that Mr. or Mrs. Edwards could

6

testify that Matthews apologized to them for planting the gun, she most certainly would have put either or both of them on the stand. The Court finds Lefeber's testimony credible in all respects. Again, with respect to Thompson, as Lefeber testified, had Lefeber been told that Thompson saw Matthews in the car that night, she most certainly would have put her on the stand to corroborate the testimony of Cheatham who was severely impeached during her testimony.

II. Analysis

Whether or not counsel will be considered "ineffective" for habeas purposes is governed by the two-part test articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, the defendant must prove that (1) counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's error, the result would have been different. Id. at 687-96; see also United States v. Nino, 878 F.2d 101 (3d Cir. 1989).

In evaluating the first prong, a Court must be "highly deferential" to counsel's decision and there is a "strong presumption" that counsel's performance was reasonable. United States v. Kauffman, 109 F.3d 186 (3d Cir. 1997)(citing Strickland). Counsel must have wide latitude in making tactical

7

decisions. Strickland, 466 U.S. at 689. The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. United States v. Gray, 878 F.2d 702 (3d Cir. 1989).

The conduct of counsel should be evaluated on the facts of the particular case, viewed as of the time of the conduct. Strickland, 466 U.S. at 690. The Third Circuit, quoting Strickland, has cautioned that: the range of reasonable professional judgments is wide and courts must take care to avoid illegitimate second-guessing of counsel's strategic decisions from the superior vantage point of hindsight. Gray, 878 F.2d at 711.

For the second prong, the courts have defined a "reasonable probability" as one which is sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. Put another way, whether there is a reasonable probability that, absent the errors, the outcome would have been different. The effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial.

The defendant's showing that there was a reasonable probability that the verdict would have been different cannot be based on mere speculation about what a potential witness would have said. In the usual case, the defendant should present the testimony of the potential witness so that the Court can

8

determine what information and testimony would have been revealed had the witness testified. Id. The Court must then decide whether this evidence, when considered along with the rest of the evidence, would have led a conscientious and impartial jury to have a reasonable doubt about the defendant's guilt. Id.

Because the Court has found that Lefeber was never told either that Thompson saw Matthews in the defendant's car or that Mr. or Mrs. Edwards heard an apology from Matthews for planting the gun, counsel was not in effective for failing to put them on the witness stand.[2]

An appropriate order shall issue.

---

[2] As this decision was in draft, the Court received a letter from Mr. Edwards with two enclosed letters: one was a letter allegedly from Dawn Matthews to the defendant and a letter from the defendant to Dawn Matthews. The letters have been docketed. The letters do not change the Court's decision. They do not relate to the ineffective assistance of counsel claim that forms the basis of the petition. The Court, however, does note that the letter allegedly from Dawn Matthews does not state that her testimony at trial was false.